Case number 14-5219, Lisa Peterson et al. v. James Dean et al. Arguments not to exceed 15 minutes per side. Mr. Harris will be arguing for all appellees and Mr. Blackburn for the appellants you may proceed. Thank you. May it please the court, Gary Blackburn of Tennessee for the appellants and I would request five minutes for my rebuttal time. All right. If the court please, this case involves issues that have been here many times. It involves the First Amendment rights of public employees on the occasion of a change of parties. My clients were administrators of elections, a position previously called coordinators of elections, and the system works like this. You have a – the General Assembly elects the Secretary of State. The Secretary of State then obviously is of the dominant party. The Secretary of State appoints the state election commissioners. The state election commissioners then appoint the county election commissioners. They are specifically required in that process to consult with members of the General Assembly for that area, for that county. They then select members of the county election commission based upon party, there being three of the majority party and two of the minority party. That body then selects the administrator of elections. When the majority changed from Democrat to Republican in Tennessee, there was then an effort made to replace administrators in all 95 Tennessee's counties. One of the ironies of this case is that if Your Honor agrees with our position and that process were to switch again in the future, probably not in my lifetime, but if it were to switch in the future, it would then be the Republican appointees who would be entitled to the First Amendment protection. The point here is, though, that the law has been clearly established. The devil is in the details. It's in how we apply this clearly established law. We go from the Supreme Court's holding in Elrod, which is to the effect that there is a presumption of a First Amendment violation, when a person is dismissed or there is an adverse job action that arises out of a political affiliation or concern. That was a little too stringent, and therefore we started trying to determine what exceptions were constitutionally permissible under the Branty case and the progeny of that. Then finally, in 1996, this court in McLeod, what is called McLeod 1, established a four-category approach to try to make these decisions easier. In establishing four categories, the court did succeed in focusing all of these cases on these particular concerns. But naturally what occurs is that the plaintiffs want that interpretation as broad as possible, and the defendants, as in this case, want it to be a paint-by-numbers category assignment based upon very limited assumptions of what something means, particularly the words like confidential. I think if you look at all of these cases, as both sides have, I think what we see is that the closer a position gets to an office that is elected, the more likely it is that the McLeod or Branty exception will apply. It looks like, if you're willing to say that that case is the one we must follow, this appears in all ways to be a political kind of a thing. Why else would the Tennessee law say when one party dominates over the other, you flip it and you have a majority of the winning party in all the counties, right? Yes, Your Honor, that's true as to the commission itself, but not the administrators. The administrators are a statutory office. We have a whole line, a hundred years plus, of Tennessee Supreme Court cases holding that the position of administrator of elections, in fact the election commissions themselves, have ministerial duties, only ministerial duties. I brought this with me today. This is a compilation previously published by the Secretary of State of Tennessee containing all of Tennessee's election laws. There simply are almost no discretionary functions to be performed, and no specific statutory requirement that the administrator of elections adhere to any particular political party. If you look at the McLeod... They do have some discretionary functions. I mean, there was talk in the briefs about redistricting plans, and the administrator makes recommendations as to county redistricting. Is that true? An administrator can make certain recommendations having to do with polling sites and this type of thing. No, redistricting. I mean, after the census, you know, the state legislature is redistricted. Congress is. I assume the county commissioners are, too, by population. So the administrator would make... If the population of the county changes, and therefore there has to be some change of districts, the county administrator makes a recommendation as to that. Does he or she not? The county administrator can make recommendations. It is the function, however, of the county commission, the county legislative body, whatever it happens to be. Well, that's the ultimate decision, but doesn't the administrator routinely make recommendations as to redistricting? The administrator can make those recommendations. Can or does? Well, we've had one recently after the 2010 census, and I presume that they... Well, not all counties in Tennessee grew. My county, Davidson County, has grown substantially. I'm sure they did. Let's see. Is that a function of the county, the election administrator, to make recommendations as to redistricting, yes or no? Yes, they make recommendations. Okay, now, isn't redistricting one of the most political decisions that the legislature or anybody makes after a census is how you're going to redistrict this? They're always looking. They have elections decided in Michigan for the Supreme Court. I think just because they fear the Michigan Supreme Court will decide redistricting of the congressional districts that come up there, and everybody's got an interest there because of what? Redistricting, because it ultimately may be decided by the Michigan Supreme Court. So people view that as a very political, very discretionary decision. Both parties will have different maps about how you redistrict this or that and this and that. It's discretionary. I would think that's kind of their best argument, that there are kind of political items going on in this post and discretionary items that may be political. So, I mean, address that, because I think of all the jobs the election administrator does of making sure you have fair elections, I mean, a lot of things can say, well, this has nothing to do with politics or partisan things, but redistricting to me is their strongest case, so kind of knock that out for me. Your Honor, administrators of elections under this format make factual presentations to the real decision makers, so that if you had, for example, there's discussion of budget, what the administrators do is look at the last similar election, how many people did we have to have, and what was the cost of that. They then submit to the county election commission that data. Then the budget is adopted by that body, and then it goes to the county commission itself where the real decision has been made. However, when you supply information to the General Assembly, the General Assembly itself in Tennessee establishes the legislative districts. It also establishes the congressional districts. That's where those real political decisions are made. Everything else is merely informational, and the law is absolutely clear that supplying mere information to a fact finder to assist the policymaker. Does the county commission district decision? The county commission would make a decision, for example, about council districts or commissioner districts, depending on whether you have metropolitan government. Who makes that decision on redistricting? The county commission does. The Davidson County City Council, what we call the city council, makes that decision, not the administrator of elections, but they require data, and so data is supplied, but there's no inherently political essence of supplying data. Well, there is in drawing districts, though. Well, not in... You can draw districts, so say you have seven commissioners, and so you're going to have a majority, one party or another, depending on how you put the Republicans in one county commission district or the Democrats in another district. I mean, I've seen the maps before. I mean, you can do all sorts of things with redistricting maps. But what you need, if you're going to gerrymander, and that's what we're talking about... We are. ...which both parties have done, but what you're looking at is, I need to know how many citizens vote in this precinct. That's not an inherently political piece of advice. All right, if the administrator did not have within his or her function making a recommendation as to redistricting, then I might agree with you. If the administrator, all the administrator does is give you statistics, then I would say that's totally ministerial, but if actually you draw a district after the census, that's discretionary, and I think that's political. The exercise of discretion, Your Honor, is not in the administrator's office. It cannot be. We do not have Democratic elections and Republican elections, and if we ever get on that slippery slope, we will destroy the confidence of the populace in a free and appropriate election process. I see my time is up. Let me ask you one thing, even though your time is gone. Were the redistricting duties added after the plaintiffs were terminated in this situation? Your Honor, I don't know the answer to that question. It was not argued below, and it's not been a big part of their presentation until today, so it's an appropriate question, but I don't know the answer to it. I will see if it's in here.  Thank you. Thank you, Your Honor. May it please the Court, I'm John Harris. I represent the DeKalb County plaintiffs, I mean defendants, which are three of the election commissioners. With me today are Rob Binkley, who represents the Wheatley County defendants, Jeffrey Ward, who represents Hawkins County, and John Schwab, who represents the election commissioners from Cannon, Henry, Jefferson, Loudoun, and Ray counties. There's a total of eight counties involved today with over 20 individually named Republican election commissioners. How are you going to share your time for argument? We have agreed that I would represent, make the argument for all counties, unless the Court has a specific question concerning one of the individual county parties, and then I would defer to that particular attorney. But I'll be handling the entire 15 minutes with the Court's permission. I would like, first off, because it has been brought up by the Court, to address the question about apportionment and redistricting. Judge Clay, you asked the question, was the rule about involvement in redistricting and apportionment in the law as of the time in question? If you look at Tennessee Code Annotated 212-201, Section A-13, it was in the code prior to 2009, the date in question. That specific code section says that one of the duties, one of the statutory duties of the administrator of elections is to assist in planning and implementing a plan of apportionment or reapportionment. So they are not just merely providing data. They have direct input and discretion into apportionment and reapportionment plans. Another, I think, very interesting component of this, which was also in the Tennessee Code, Judge Griffin, is your question at the time in 2009 falls under 212-116, which is the duties of the election commission itself. And Section A-7 of that code states that, and this is very odd in the way it's worded, but it states that the election commission shall assist the administrator in designating polling places, poll workers, and precinct boundaries. Does that mean the administrator picks the poll officials? Yes, Your Honor, it does. Is that the way it is in practice, or is that the way it just says that? In practice, my experience, because I represent a couple of these counties day to day, the administrators do the work to interview, select, and propose who the poll worker is going to be. Those recommendations are presented to the county election commission and typically just ratified by it. But it is, in fact, the administrator who picks the poll workers that picks the locations where you will have early voting locations. I was going to ask if that's done, too. Yes, it is, and that's done primarily by the administrator making recommendations to, and actually under A-7 of 212.116, it says the commission shall assist the administrator in making those decisions. So it's almost the inverse of what you would normally see. But the law in Tennessee as of 2009 was clear in two statutory respects that the administrator of elections was directly involved with apportionment, reapportionment, and drawing precinct lines, which were district lines within the county. Now, although I don't believe this case is cited in any of the briefs, it may be, the U.S. Supreme Court in Gaffney v. Cummings, 412 U.S. 735, makes two comments that hit right on the very question that Judge Griffin was trying to make, and that is that politics and political considerations are inseparable from districting and apportionment. The court also commented that the reality is that districting inevitably has and is intended to have substantial political consequences. So not only are these statutory duties that these positions have specifically encompassing districting, redistricting, and apportionment, but the U.S. Supreme Court clearly says that it's well known that those activities have significant political impact, because as the court noted in Gaffney, even seasoned legislators would have a hard time winning if those districts were drawn in such a fashion that they no longer represented the majority of the people of the same party. Do precincts in Tennessee have to have about the same number of people, or are they out of semblance of some sort? In my experience, Your Honor, the precincts are basically drawn within the counties, and they are apportioned so that they represent substantially equal segments of the population. They have to, one man, one vote. Yes, it's correct, Your Honor. That applies to county commissioners, too, does it not? It does, Your Honor, exactly. So they have to have substantially equal balance. I'm with you on redistricting. I think that's inherently political. That's inherently discretionary. But where you put polling places to say that you could do that for political reasons seems to me would probably be unconstitutional. It may. Would it not? It sounds like it could. What happens in Tennessee, and I know the way these statutes are written, by statute they're only required to have one early voting location, and that is the election commission office itself. We just had the Ohio case come up here. It was reversed by the Supreme Court. The issue there was the constitutional violation here. And to say that, okay, these are inherently political decisions, whether you're going to have early voting or not, and where are the locations and stuff, I mean there are constitutional limitations to this stuff. There are. And I think the point is that the administrator of the elections, with the consent and advice of the election commission, they get to pick where the early voting locations are, but it has to be As long as it's not unconstitutional. As long as it's not unconstitutional. Okay, so there's discretion within the Constitution. There is. They could have five. They could have one. There's no minimum requirement except they have to have one. They can have more. And they can have more early voting days than the minimum threshold set forth in the statute. But those are all discretionary matters which either fall within the duties statutorily enumerated to the administrator of elections, or they are matters in which the administrator of the elections, based upon the statutory framework, has significant input and advice to the county election commission. Now, I would like to point out, because if you look at the statutory framework, and this case was almost entirely decided by the district judge based on the statutory framework. He makes almost no references to facts other than statutory content. If you look at the Tennessee system, as Mr. Blackburn said, the county election commissioners are politically selected based upon majority party control in Tennessee. They're appointed. So we've got 475 of them across the state appointed. The majority party even holds majority control of county election commissions in counties in which the minority party actually holds the legislative seats. So even in those counties, they dominate. The county election commissions serve two-year terms under Tennessee law. One of the first things they're required to do upon their appointment under 212.116.A1 is to appoint an administrator. There are some statutory elements under 212.116 as to what the job qualifications of an administrator are, but omitted from that list is any reference as to whether or not political party affiliation can or cannot be considered, which is a fact that the courts sometimes pick up on in determining whether or not and to what extent the branty exceptions apply. Your opponent, Mr. Blackburn, says the Tennessee courts have already said that this is a ministerial job. What about that? Yes, Your Honor. Mr. Blackburn typically relies in making that statement on a case called City of Memphis v. Shelby County Election Commission, and that's a case in which the Shelby County Election Commission took it upon itself to refuse to place an initiative on a ballot because the County Election Commission determined that they thought it was unconstitutional and therefore shouldn't be on the ballot. And the Tennessee Supreme Court in that case really was deciding a separation of powers issue as to whether or not an administrative agency like an election commission has the authority to make a determination that really is the job of the judiciary, whether or not a ballot measure is constitutional or not. And in doing that, the Tennessee Supreme Court did in fact use the terminology that said basically the election commissions are ministerial in nature. But that's not the only Tennessee Supreme Court case which talks about this topic. And on that same theme, the Tennessee Supreme Court in a case called Gaffney looked at this issue and here's what, I'm sorry, not Gaffney, Hammond v. Wimberly, 196 Southwest 2nd, 561. And here's what came up in the Hammond case. The court was looking at the duties of the election commission specifically. And the court talked about the nuance between what's a ministerial duty and what's a discretionary duty. And the Supreme Court of Tennessee said ministerial duties are those duties which are defined with such precision and certainty as to leave nothing to the exercise of discretion or judgment. And that those duties which require like apportionment, reapportionment, precincting, discretion or judgment are therefore discretionary. And then the court says this. We are of the opinion that some of the duties prescribed therein of the commissioner of elections are ministerial, such as fixing the date of the election or publication of the notice, et cetera. There are many duties, however, that are discretionary. So we disagree with the assertion that the Tennessee Supreme Court has absolutely resolved the question for purposes of this case as to whether or not these statutory duties are all purely ministerial. Clearly, as Judge Griffin has pointed out, when you come to redistricting, reapportionment, things of that nature, it simply is not the case. Those involve political factors, and they involve some call on discretion for the people implementing those tasks. Now, the defendants in this case Counsel, let me ask you this. Why wouldn't the case benefit from having the record further developed as to the nature and extent of the individual's discretion and how much discretion is exercised with regard to policy questions and how much time is spent on budget and personnel matters that might not be discretionary? Just because of the way the position is labeled, can the decision be made at this stage of the litigation? What would you say about that? Your Honor, I believe that because of the degree of enumeration within the statute of the duties, that, yes, the decision can be made based upon this Court's existing case law, Ray v. Davis, Sumay v. Kenton County, Tesla, Blair, Cope. Those cases all say, when you look at certain types of enumerated activities, like budgeting, making employment decisions, running all the day-to-day activities, those cases consistently say that those are inherently political activities requiring discretion in the implementation of the law and, therefore, yes, you can decide at this point without having to send this back to the trial court for further findings of fact. I would also point out that if you look at, for example, the Lane decision, when you talk about the Category 1 analysis under McLeod v. Testa, for example, Lane teaches us that you look at the inherent duties of the office, not necessarily the duties of the office as performed by either the prior office holder or what their testimony would be as to how they fulfilled the job. You look at the inherent duties, which the statutory framework gives us, and you also look at what the position might include once you have the new employer in place. So, for example, it's not really a test of what was actually happening at the time where the testimony makes that big of a difference. It's more so a question of these inherent duties that were given when you look particularly at Ray v. Davis and Sumay v. Kenton County. The courts have already looked at many of these categories, budgeting, employees, taking care of the public records, running elections. All of those are specifically addressed in Ray and Sumay, and the court finds in Category 1 and Category 2 analysis both that those are inherently political activities requiring discretion to carry them out. Okay, here we have eight different plaintiffs from eight different counties. Yes, Your Honor, that's correct. So, I mean, if we had an evidentiary hearing, we would have separate hearings for each eight of these to find out which plaintiff A did, plaintiff B did, plaintiff C did, and therefore we may have, I mean, if it were fact-specific, I suppose there might be some differences there. Are you saying we ought to look at what the statute requires them to do, what the authority of the statute, as opposed to what they actually did? Yes, Your Honor, and that's exactly what this court has previously determined. It would be rather complicated. Well, and that brings up also, for example, and I know I'm running out of time to answer your question, the Rice canon, which McCloud talks about, which says if you have a job like the Administrator of Elections where the duties are very broad and all-encompassing, that the grantee LROD exception, by necessity, has to be broadly construed to presumptively include those positions. So looking at just the statutory enumeration of duties and applying the Rice canon, which McCloud incorporates, you come to the conclusion that we really don't need to have detailed fact-finding on what these individual plaintiffs did when they were in control because Lane tells us that's not controlling. We're looking at the inherent duties of the office as it might be exploited by another employer down the road, particularly when there's a change in political control. Thank you for your time. If there are no other questions. Thank you. Your Honor, as I told you, I would find that statute, and I have. It is TCA section 2-12-202, subparagraph 13, and it says, assistance in the planning and implementation of any plan of apportionment or reapportionment of any governmental entity involved in the electoral process. That is exactly what it states. That was in effect at the time of these discharges. It was. This was published in 2007, so I'm confident that it was. That was part of their duties at this time. Part of their duties. I think what's missing from this discussion, first of all, as the Court has postured, posed, I should say, these people do have different assignments. We have some counties with 5,000 people. We have other counties like Davidson with over 600,000 people. The duties and the staffs and so forth tend to be very different. In each of these cases, we have affidavits from these plaintiffs stating what their duties were and denying that they had any discretionary duties at all in connection with those things being raised in defense, particularly the budgetary matter. That was the focus of it. Would you argue that it's possible that some plaintiffs win, some lose? I think in this case it's inevitable. There are three of these plaintiffs about whom there is essentially no question about whether this was a political decision. Why are you pursuing the appeal as to that? I think you could be sanctioned if there's no basis for it. Well, I don't think so in this case, Your Honor, because this was done by agreement of the parties. This is our third attempt to have this particular issue decided by this Court. There are plaintiffs before us that concededly don't have a claim without any merit. You said surely three of my clients will lose this case. No, I said the opposite. I beg your pardon. I didn't say that clearly enough, Your Honor. It's precisely the opposite. There are three. One of these, Wheatley County, for example, they called her in, said they had no choice, they apologized, praised her for her good work, and said this is just politics. So there aren't any issues there. There are others where... But if that's a political job, why, there's no violation, right? I beg your pardon? If his or her job is political, then there's no violation at all, right, under all these things. If it's inherently political, if the... Under the... What we've lost here in this discussion, Your Honor, respectfully, is the McLeod categories. Right. Two is positions to which a significant portion of the total discretionary authority available to Category 1 position holders has been delegated. That's what McLeod says. The fact that an administrator may assist the actual decision-maker doesn't mean that a significant portion of the total authority has been delegated, which is what's required by McLeod. Category 3 has to do with confidential advisors. Remember, we have three... Presently, we have three Republicans and two Democrats. There was a change of one position because of this. There is no confidential communication. It is... We have three Republicans and two Democrats on what? On the County Election Commission. And they're the persons who hire the administrator. And so... State, county? Which... Each county. Oh, okay, each county. Okay, I thought you were talking about a particular... No, they're all the same. Each county has three and two. They're all the same. Before, it was three Democrats and two Republicans. Now it's the opposite. And that's true in all 95 Tennessee counties. Now, they then cannot have any confidential communications. That violates our open meetings laws and our open records laws. They can't be confidential. In addition to that, they are reporting to a committee that has both parties represented. So they're not making political suggestions in a confidential basis to anyone, nor can they lawfully do that. And it's not a significant portion of anything. Mr. Harris is quoted accurately from one case making some distinctions, but I think he would have to concede that we have a century of cases out of the Tennessee Supreme Court saying that these duties are essentially ministerial. If these duties are essentially ministerial, merely going behind their particular duties and finding one, as Your Honor did, finding one particular duty that arguably involves discretion of a political nature does not transform that office into a political office where association with a particular party is necessary to the efficient performance of the job. And that's the requirement. Which category did the district court put these jobs in, number two? Two and three. Okay. And respectfully, it just doesn't fit. Thank you, Your Honor. Thank you very much, and the case is submitted. Clerk may call the roll.